IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 14-cv-2200-WJM-KMT

THERESE BYORICK,

    Plaintiff,

v.

CAS, INC., a Delaware Corporation, and
NORTHROP GRUMMAN SYSTEMS CORPORATION, a Delaware Corporation,

    Defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Therese Byorick ("Plaintiff") brings this action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., against Defendants CAS, Inc. ("CAS") and Northrop Grumman Systems Corporation ("Northrop"). Northrop filed a Motion to Dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Motion"), which is now before the Court. (ECF No. 59-1.) For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

The following facts and allegations are gathered from Plaintiff's Second Amended Complaint ("Complaint"). (ECF No. 56.) Northrop was the primary contractor on the Missile Defense Agency JRDC contract ("JRDC Contract") at Schriever Air Force Base in Colorado Springs. (*Id*. at 2.) Plaintiff was employed by one of Northrop's subcontractors, CAS. (*Id*.) Subcontractor workers on the JRDC Contract must apply for their positions through JRDC Staffing/Northrop, which is a business group within

Northrop that manages all employee hiring on the JRDC Contract. (*Id*. at 2-3) Plaintiff applied for, and received, a position on the JRDC Contract after JRDC Staffing/Northrop approved her application. (*Id*. at 3.)

Plaintiff worked under the supervision of Ron Sintas, an employee of another subcontractor, Boecore, Inc. (*Id*. at 4, 6.) Mr. Sintas sexually harassed Plaintiff during her employment. (*Id*. at 6.) Plaintiff reported the harassment to CAS, which CAS reported to Boecore. (*Id*. at 7.) Boecore concluded that Mr. Sintas acted inappropriately and he was removed from the JRDC Contract. (*Id*.) On November 1, 2013, Northrop eliminated Plaintiff's position on the JRDC Contract. (*Id*. at 5-6.) However, Plaintiff remained employed with CAS until February 20, 2014, at which time CAS terminated her employment after failing to find her a replacement position. (*Id*. at 12.) Plaintiff alleges that she was subjected to materially adverse employment actions from CAS and Northrop in retaliation for her sexual harassment complaints. (*Id*. at 13.)

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be

cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.  ANALYSIS

It is unlawful under Title VII for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of sex. 42 U.S.C. § 2000e-2. Nor can an employer "discriminate against any of his employees . . . because [the employee] has opposed any . . . unlawful employment practice." 42 U.S.C. § 2000e-3; *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013) ("Title VII forbids retaliation against an employee because she has opposed any practice made unlawful by Title VII") (citation and internal quotation marks omitted).

To present a *prima facie* case of Title VII retaliation against Northrop, Plaintiff must prove that it was her employer. *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014). If Plaintiff is unable to do so, her claims fail as a matter of law. *Id*. Northrop argues that it was not Plaintiff's employer, and therefore Plaintiff's Second Amended Complaint fails to state a cause of action under Title VII. (ECF No. 59-1.) The Court addresses this argument below using the Tenth Circuit's joint-

employer analysis.[1]

Two entities are joint employers if they "share or co-determine those matters governing the essential terms and conditions of employment" and "exercise significant control over the same employees." *Knitter*, 758 F.3d at 1226. An entity with "sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer within the scope of Title VII." *Id*. The most important factor to determining control over the terms and conditions of employment is "the right to terminate it under certain circumstances." *Id*. Courts also consider "the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; . . . day-to-day supervision of employees, including employee discipline; and . . . control of employee records, including payroll, insurance, taxes and the like." *Id*. The various factors are discussed in turn.

1.      <u>Ability to Terminate Employment</u>

Defendant likens this matter to *Knitter*. (ECF No. 59-1 at 8.) In *Knitter*, the

---

[1] This circuit uses one of three tests to determine whether a defendant is indeed an "employer" under Title VII, depending on the situation. *Knitter*, 758 F.3d at 1226. These tests are: (1) the hybrid test; (2) the joint-employer test; and (3) the single-employer test. *Id*. The hybrid test differentiates independent contractors from employees, and the single-employer test allows a plaintiff who is employed by one party to hold another liable if the two parties essentially constitute a single employer. *Id*. The joint-employer test, in contrast, determines whether two separate entities may both be considered employers of the plaintiff. *Id*. "Although [the joint-employer and single-employer] tests are sometimes confused, they differ in that the single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities." *Id*. at 1226-27. The parties agree that the joint-employer test applies here. Neither party alleges that CAS and Northrop constitute a single employer, nor is there any dispute that Plaintiff was employed by CAS. *See id.*; (ECF Nos. 59-1 & 61.) Rather, the question is whether Northrop was also Plaintiff's employer. The Court will therefore apply the joint employer test to resolve the Motion.

plaintiff worked as a handyman for Lewis General Contracting, Inc. ("LG"). 758 F.3d at 1217. The plaintiff was assigned to work for the defendant, which was one of LG's only clients. *Id*. at 1219. One of the defendant's maintenance supervisors sexually harassed the plaintiff during her employment. *Id*. at 1222. When the plaintiff reported the harassment to the defendant, the defendant contacted LG and asked it not to send the plaintiff to perform any further work. *Id*. at 1223. LG thereafter terminated the plaintiff's employment because it had no work assignments available for the plaintiff beyond handyman work with the defendant. *Id*. The plaintiff alleged that the defendant effectively forced LG to fire her, and thus it had the power to terminate her employment. *Id*.

The Tenth Circuit disagreed. The court found that the defendant was unaware that all, or nearly all, of LG's business came from the defendant. *Id*. at 1229. If LG did have additional clients, her removal from the defendant's projects "might well have resulted in her reassignment to a different client and not termination." *Id*. Moreover, the defendant had no power to terminate the plaintiff's employment with LG and, at most, could only remove her from its own handyman projects. *Id*. The court accordingly held that there was no genuine dispute "that control over the most important condition of [the plaintiff's] employment under the joint employer test—the ability to terminate her employment—lay solely with [LG]."

Like the defendant in *Knitter*, Northrop terminated Plaintiff's JRDC Contract position, but could not have terminated her position at CAS. Plaintiff's operative Complaint states that "Northrop's control of the funding and hiring process ensured that

5

its decision to eliminate [her] position on the JRDC [C]ontract effectively terminated her direct employment with CAS." (ECF No. 56 at 6.) But the Complaint further states that "[t]he elimination of [Plaintiff's] position on the JRDC contract left [her] without a job to perform *despite her continued employment with CAS*." (*Id*. at 11) (emphasis added). Notably absent from Plaintiff's Complaint is any allegation that Northrop was CAS's only client and, if it was, that Northrop knew as much. The Court therefore finds that Plaintiff's Complaint fails to allege facts establishing that Northrop was able to terminate her employment.

2. Payment

Plaintiff's Complaint contains little information regarding Northrop's "control of employee records, including payroll, insurance, taxes and the like." *Knitter*, 758 F.3d at 1226. However, the payment arrangement between Northrop and CAS is similar to that in *Knitter*. The *Knitter* defendant did not pay the handymen directly; instead, the defendant paid LG, which in turn paid its handymen after deducting a certain percentage for itself. *Id*. at 1223. The court held that the defendant had no control over how much money the plaintiff received after LG's deductions. *Id*. at 1229. Similarly, here, "Northrop provided the funding for" Plaintiff's position, and "CAS depended upon the funding from Northrop to pay [Plaintiff]." (ECF No. 56 at 4.) Therefore, this factor and the absence of any allegation that Northrop controlled Plaintiff's employee records weigh against finding that Northrop was Plaintiff's joint employer.

3. Authority to Supervise, Discipline, and Establish Rules

"[T]he ability to promulgate work rules and assignments . . . [and the] day-to-day supervision of employees, including employee discipline" are other factors the Court

should consider. *Knitter*, 758 F.3d at 1229. Plaintiff alleges that Northrop assigned her daily tasks, and that she worked under a "chain of command" controlled by Northrop employees to whom she "regularly reported" regarding the "progress and status of her assigned tasks." (ECF No. 56 at 4-5.) Northrop played a role in hiring Plaintiff on the JRDC Contract, and provided her training and written guidance regarding her position. (*Id.*) Northrop furthermore "had the authority to discipline [Plaintiff] without the approval of CAS," set Plaintiff's "schedule and work hours," and approved her vacation or other personal time off. (*Id.*) At this phase of the litigation, the Court must accept these well-pled allegations and view them in the light most favorable to Plaintiff. *Schneider*, 493 F.3d at 1177. Given the critical importance of these factors in the real world to the overall work relationship Plaintiff had with the Defendants, the Court finds that these remaining factors weigh fairly heavily in favor of finding that Northrop was Plaintiff's joint employer.

    4. <u>The Factors Collectively</u>

  All told, the Complaint adequately pleads that Northrop was Plaintiff's employer for purposes of Title VII liability. The Court acknowledges that Northrop's inability to terminate Plaintiff's employment, and the great weight given to this factor by the Tenth Circuit, weighs against finding a joint employer relationship. *See Knitter*, 758 F.3d at 1228 n.10 (noting that "at least one district court in our circuit has indicated the ability to terminate is the *dispositive factor* under the joint employment test") (citing *Blagg v. The Tech. Grp, Inc.*, 303 F. Supp. 2d 1181, 1185 (D. Colo. 2004) (emphasis added)). But "the ability to terminate may not be the sole factor courts should consider under the joint

employment test." *See Knitter*, 758 F.3d at 1228.  Plaintiff has pled numerous other facts that, if true, would support a finding that Northrop was her employer.  Northrop's challenge to these allegations would be better assessed and analyzed on a Motion for Summary Judgment[2] due to the currently undeveloped record in this case, and the Court's obligation to accept as true, at this time, all of Plaintiff's well-pled allegations.  *Ridge at Red Hawk, LLC*, 493 F.3d at 1177.  Thus, at the present juncture of these proceedings, employing a balancing test of the relevant factors discussed above does not decisively point to the imposition of the "harsh remedy" of dismissal of the action at this time.  The Court accordingly concludes that Northrop's Motion should be denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendant Northrop Grumman Systems Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 59) is DENIED.

Dated this 2nd day of July, 2015.

BY THE COURT:

William J. Martinez
United States District Judge

---

[2]  The Court notes that *Knitter* involved a challenge to the district court's grant of summary judgment, not its dismissal under Rule 12(b)(6).  *Knitter*, 758 at 1218.