**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2200-WJM-KMT

THERESE BYORICK,

      Plaintiff,

v.

CAS, INC., a Delaware Corporation, and
NORTHROP GRUMMAN SYSTEMS CORPORATION, a Delaware Corporation,

      Defendants.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff Therese Byorick ("Plaintiff") brings this action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), against Defendants CAS, Inc. ("CAS") and Northrop Grumman Systems Corporation ("Northrop").  CAS filed a Motion to Dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), which is now before the Court ("Motion").  (ECF No. 60.)  For the reasons set forth below, the Motion is denied.

## I.  BACKGROUND

The following facts and allegations are gathered from Plaintiff's Second Amended Complaint ("Complaint").  (ECF No. 56.)  Northrop was the primary contractor on the Missile Defense Agency JRDC contract ("JRDC Contract") at Schriever Air Force Base in Colorado Springs.  (*Id*. at 2.)  Plaintiff was employed by one of Northrop's subcontractors, CAS.  (*Id*.)  Plaintiff applied for, and received, a position on the JRDC Contract after Northrop's staffing agency approved her application.  (*Id*. at 3.)

Plaintiff worked under the direct supervision of Ron Sintas, an employee of another subcontractor, Boecore, Inc.  (*Id*. at 4, 6.)  Mr. Sintas allegedly sexually harassed Plaintiff during her employment.  (*Id*. at 6.)  Plaintiff reported the harassment to CAS, which CAS reported to Boecore.  (*Id*. at 7.)  Boecore concluded that Mr. Sintas acted inappropriately and he was removed from the JRDC Contract.  (*Id*.)  Plaintiff then expressed her concerns to CAS's Human Resources Department that Northrop would retaliate against her.  (*Id*.)  On November 1, 2013, Northrop eliminated Plaintiff's position on the JRDC Contract.  (*Id*. at 5-6.)  However, Plaintiff remained employed with CAS until February 20, 2014, at which time CAS terminated her employment after failing to find her a replacement position.  (*Id*. at 12.)  Plaintiff alleges that she was subjected to materially adverse employment actions from CAS and Northrop in retaliation for her sexual harassment complaints.  (*Id*. at 13.)

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but

2

also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169,

1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*,

550 U.S. at 556).

### III.  ANALYSIS

It is unlawful under Title VII for an "employer" to "discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of

employment" on the basis of sex.  42 U.S.C. § 2000e-2.  Nor can an employer

"discriminate against any of his employees . . . because [the employee] has opposed

any . . . unlawful employment practice."  42 U.S.C. § 2000e-3; *Tabor v. Hilti, Inc*., 703

F.3d 1206, 1219 (10th Cir. 2013) ("Title VII forbids retaliation against an employee

because she has opposed any practice made unlawful by Title VII") (citation and

internal quotation marks omitted).[1]

CAS argues that the Second Amended Complaint fails to state a cause of action

against it for retaliation.  (ECF No. 60.)  "To state a *prima facie* case for retaliation under

Title VII, a plaintiff must show (1) that [s]he engaged in protected opposition to

discrimination, (2) that a reasonable employee would have found the challenged action

materially adverse, and (3) that a causal connection existed between the protected

activity and the materially adverse action."  *Khalik v. United Air Lines*, 671 F.3d 1188,

---

[1]  There is no dispute that CAS employed Plaintiff, and the Court recently held that the Complaint sufficiently pleads that Northrop was Plaintiff's joint employer.  (ECF Nos. 67 at 2 & 72.)

1193 (10th Cir. 2012) (internal quotation marks omitted).  CAS claims it was not

responsible for the elimination of Plaintiff's position on the JRDC Contract, and the

Complaint alleges no causal connection between Plaintiff's opposition to discrimination

and her eventual discharge.  (ECF No. 60 at 5-9.)

Plaintiff responds that she has not asserted "a traditional, single employer

retaliation claim under the *McDonnell Douglas* burden shifting standard."  (ECF No. 62

at 2.)  Rather, Plaintiff alleges that CAS violated Title VII when it learned Northrop

intended to retaliate against her and failed to take any preventative action.  (*Id*.)  This

"duty to protect" theory has not been adopted in the Tenth Circuit.  *See Sandoval v. City*

*of Boulder*, 388 F.3d 1312, 1324 n.4 (10th Cir. 2004)  ("Because we find no joint

employer relationship we need not reach the question of what the scope of one joint

employer's vicarious liability would be for actions of its partner in which it did not

participate or over which it had limited or no control.").  CAS responds that the Court

should not create new law in this case, and even if the "duty to protect" theory is

cognizable, Plaintiff's Complaint fails to support such a claim.  (ECF No. 67 at 2-7.)

The existence of a joint employer relationship will not in itself render an employer

liable for its co-employer's discriminatory actions.  *Torres-Negron v. Merck & Co., Inc*.,

488 F.3d 34, 41 n.6 (1st Cir. 2007) ("[J]oint-employer liability does not by itself implicate

vicarious liability. . . .  Thus, a finding that two companies are an employee's 'joint

employers' only affects each employer's liability to the employee for their *own* actions,

not for each other's actions.") (emphasis in original); *Lima v. Addeco,* 634 F. Supp. 2d

394, 400 (S.D.N.Y. 2009) ("Even where two companies are deemed a joint employer,

4

however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII."). Rather, under the theory advanced by Plaintiff, liability is generally imposed where an employer knows or should have known of discrimination against the plaintiff and fails to take any remedial action, regardless of whether the employer actually participated in the discriminatory conduct. This theory has been acknowledged, in some form, by the Second and Seventh Circuits.[2] *See Lima v. Adecco,* 375 F. App'x. 54 (2d Cir. 2010) ("We also agree with the District Court that even if Adecco and Platform could be considered a 'joint employer,' Adecco could not be held liable to plaintiff based on that legal theory because there is no evidence that Adecco either knew or should have known about any of the alleged discrimination [by Platform]."); *Whitaker v. Milwaukee Cnty.,* 772 F.3d 802, 812 (7th Cir. 2014) ("Here, nothing in the record suggests that the County participated in the alleged discriminatory conduct or failed to take corrective measures within its control."). The Tenth Circuit has yet to rule on the extent of joint employer liability in these circumstances. *Sandoval*, 388 F.3d at 1324 n.4.

Plaintiff's position finds support in the Equal Employment Opportunity

---

[2] It has also been recognized by several lower courts in other circuits. *See, e.g., U.S. E.E.O.C. v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1187 (D. Haw. 2012) (acknowledging that the Ninth Circuit "has held that employers may be liable for discriminatory conduct by non-employees where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct," and applying said theory to joint employment context); *Watson v. Adecco Emp't Servs., Inc.,* 252 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003) ("For a joint employer to be held liable for discriminatory conduct, a plaintiff must show that the joint employer knew or should have known of the conduct and failed to take corrective measures within its control"); *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33, 46 (D.D.C. 1997) (same); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 937 (D.S.C. 1997) (same).

Commission's ("EEOC") Enforcement Guidance.  The following portion of the pertinent

EEOC Guidance addresses the application of Title VII to individuals placed in job

assignments by temporary employment agencies:

> If a client discriminates against a worker assigned [to it] by a
> staffing firm, who is liable?
>
> The [staffing] firm is liable if it participates in the client's
> discrimination.  For example, if the firm honors its client's
> request to remove a worker from a job assignment for a
> discriminatory reason and replace him or her with an
> individual outside the worker's protected class, the firm is
> liable for the discriminatory discharge.  The firm also is liable
> *if it knew or should have known* about the client's
> discrimination and failed to undertake prompt corrective
> measures within its control.

EEOC, No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent

Workers Placed by Temporary Employment Agencies and Other Staffing Firms, 1997

WL 33159161, at *10 (emphasis added).[3]

   The Court finds this view, as applied to joint employers, to be persuasive.[4]  The

---

[3]  The "should have known" theory has also been applied in the supervisor sexual
harassment context.  *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir.
2013) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 758 (1998)) ("An employer may be
directly or vicariously liable for a hostile workplace.  To show direct employer liability, an
employee must present enough evidence for a reasonable jury to find that the employer knew
or should have known about the harassment but failed to stop it.  The 'should-have-known'
formulation is, in effect, a showing that the employer was negligent in failing to stop
harassment.").

[4]  EEOC guidance is "only entitled to [the Court's] respect to the extent that it has the
power to persuade."  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047 n.16 (10th Cir.
2011).  However, although "not controlling upon the courts by reason of [its] authority, [EEOC
guidance] do[es] constitute a body of experience and informed judgment to which courts and
litigants may properly resort for guidance."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65
(1986).  Here, "[t]he position set out in the EEOC's guidance and compliance manual merits
respect."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2540 (2013).

Court therefore holds that a joint employer is liable under Title VII based on its co-employer's discriminatory conduct where it participated in the discrimination, or where it knew or reasonably should have known of the discrimination but failed to take prompt corrective measures within its control.  In so holding, the Court notes that this theory is not so novel as CAS would have the Court believe, and joins the many other courts that have reached the same result on the issue presented.

Concluding that Plaintiff's duty to protect theory of liability is cognizable in this jurisdiction, the Court proceeds to CAS's objections to the application of such a theory in this case.  CAS argues that the Complaint fails to establish that it knew or should have known of any retaliation or other discrimination by Northrop.  (ECF No. 67 at 3.)  However, the Complaint alleges that Plaintiff "expressed her concern to CAS Human Resources that Northrop Grumman would retaliate against her," and she later "requested that CAS remove her from under Mr. Weldele's [a Northrop employee] supervision due to her fear of retaliation by Northrop."  (ECF No. 56 at 8-9.)  Claire DelConte, alleged to be the Human Resources Manager at CAS, further "stated to [Plaintiff] on October 9, 2013 that she was concerned about possible retaliatory actions."  (*Id*. at 7-8.)  Therefore, Plaintiff's Complaint adequately pleads that CAS knew or should have known of Northrop's potential retaliation, and that "CAS acquiesced in Defendant Northrop's retaliation by failing to take any action to stop Defendant Northrop from retaliating against [Plaintiff] . . . for fear of jeopardizing its business relationship with Northrop."  (*Id*. at 13.)

_____

CAS further argues that for it to be liable under the duty to protect theory it must have known about Northrop's discriminatory conduct that was taking place or had already occurred.  (ECF No. 67 at 3-4.)  According to CAS, liability cannot be predicated on Plaintiff's speculation regarding future retaliation, even if her fears were expressed to CAS.  (*Id.*)  This position is too narrow.  Title VII's "primary objective is a prophylactic one; it aims, chiefly, not to provide redress *but to avoid harm*."  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999) (citation and internal quotation marks omitted) (emphasis added).  Moreover, antidiscrimination laws are liberally interpreted given their remedial purpose.  *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 983 (10th Cir. 2002).  The Court could not properly enforce Title VII's provisions were it to limit a joint employer's duty to protect its employees to harm that had already occurred.  This "wait-and-see" attitude would not incentivize employers to prevent discrimination, and the Court rejects that approach here.  *Cf. Williams*, 988 F. Supp. at 938 ("Requiring employees to notify employers of any alleged discrimination encourages in-house resolution of employment problems.").

Finally, CAS argues that expressing concerns about potential retaliation is not a protected activity under Title VII.  (ECF No. 67 at 5.)  The Court cannot conclude from the face of the Complaint that Plaintiff's statements to CAS regarding her fears of retaliation were too vague to put CAS on notice of Northop's intentions and motivations. *See Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004) ("But a vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not

constitute protected activity and will not support a retaliation claim."). Plaintiff alleges that she reported her concerns to CAS, and that CAS knew or should have known prior to her termination that Northrop "was planning to retaliate against [her] for her complaint of sex discrimination." (ECF No. 56 at 8-13.) These well-pled allegations do not merit dismissal under Rule 12(b)(6).

For similar reasons, the Court rejects CAS's argument that the Complaint clearly states CAS could not have prevented Northrop from terminating Plaintiff. (ECF No. 67 at 7.) Northrop's ability to hire or fire Plaintiff from the JRDC Contract does not necessarily mean that CAS would have been unable to intervene to protect Plaintiff from Northrop's discrimination, and the Complaint pleads as much. (*See, e.g.*, ECF No. 56 at 13.) However, the Court cautions Plaintiff that she bears the burden of proving that CAS failed to take corrective measures *within its control*. CAS's argument would therefore be more persuasive in a Motion for Summary Judgment should Plaintiff fail to adduce evidence indicating that CAS did in fact have the ability to take corrective measures within its control.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendant CAS's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 60) is DENIED.

Dated this 8th day of July, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge