IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 14-cv-2200-WJM-KMT

THERESE BYORICK,

      Plaintiff,

v.

CAS, INC., a Delaware Corporation, and
NORTHROP GRUMMAN SYSTEMS CORPORATION, a Delaware Corporation,

      Defendants.

---

## ORDER ON SUMMARY JUDGMENT MOTIONS

---

Plaintiff Therese Byorick ("Plaintiff") brought this action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), against Defendants CAS, Inc. ("CAS") and Northrop Grumman Systems Corporation ("Northrop").

Now before the Court are the parties' several Motions for Summary Judgment, including Defendant CAS's Motion for Summary Judgment (ECF No. 79), Defendant Northrop's Motion for Summary Judgment (ECF No. 80), and Plaintiff's Motion for Partial Summary Judgment Against Defendant Northrop on Joint Employer Relationship (ECF No. 86). For the reasons set forth below, the Court grants Northrop's Motion and therefore also grants CAS's Motion and denies Plaintiff's Motion as moot.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTS

The following facts are undisputed except as noted otherwise.

Northrop is the prime contractor for the federal Missile Defense Agency's ("Agency") JRDC contract ("JRDC Contract"),[1] which supports the operations of the Agency's Joint National Integration Center, located at Schriever Air Force Base in Colorado Springs. (*ECF No.* 81 at 5, ¶ 2.) Northrop in turn contracts to numerous other companies to perform work on the JRDC. (*Id.*)

---

[1] The "JRDC Contract" is short for the Joint National Integration Center Research and Development Contract. (ECF No. 81 at 5, ¶ 2.)

2

Prior to March 2008, Plaintiff was formally employed by Northrop, doing work on the JRDC.  (ECF No. 88 at 11, ¶ 51.)  As of March 2008, she "badged over," from Northrop to become a formal employee of CAS, one of Northrop's subcontractors on the JRDC, while still working on the JRDC.  (*Id.* ¶¶ 52–53.)

The JRDC is organized into several "directorates" and "organizations" within those directorates.  (ECF No. 81 at 5, ¶ 4.).  Through CAS's subcontract with Northrop, Plaintiff worked as a Control Account Manager ("CAM") in the Tenant Engineering and Operations ("TEO") organization of the Development Test and Operations ("DTO") directorate.  (*Id.* at 5–6, ¶¶ 5, 9.)  As stated by Northrop, Plaintiff's primary duty as a CAM "was to track financial numbers across the task orders that TEO fulfilled," and she was responsible "to forecast the organization's planned expenditures, create a budget plan, create monthly cost performance reports, and accurately report financials."  (*Id.* at 6–7, ¶ 10.)

On September 17, 2013, Plaintiff made a complaint of sexual harassment by her direct supervisor on the JRDC, Ronald Sintas, the Organization Manager of the TEO.  (*Id.* at 7, ¶¶ 12–14; ECF No. 99 at 16, ¶ 77.)  Mr. Sintas was a formal employee of another subcontractor, Boecore.  An investigation of Plaintiff's complaint, concluded that Mr. Sintas had engaged in inappropriate behavior and Boecore gave him the choice to resign or be terminated for cause.  (ECF No. 81 at 8, ¶¶ 15–16.)  He immediately resigned.  (*Id.*)

The parties disagree as to exactly when certain Northrop managers learned of the sexual harassment complaint and investigation, as well as the extent to which Northrop

employees participated in the investigation.  (*See, e.g.*, ECF No. 88 at 21, ¶¶ 145–47; ECF No. 96 at 17–18, ¶¶ 145–47).  At a minimum, Northrop agrees that it acted as a "go between" for CAS and Boecore in the investigation.  (ECF No. 88 at 20, ¶ 138; ECF No. 96 at 17, ¶ 138.)  Plaintiff and Northrop also agree that in approximately the first week of October 2013, Janet Mills, the Human Resources Manager for the JRDC (a Northrop employee), was aware of the outcome of Plaintiff's complaint and briefed the head of the DTO directorate, Jeffrey Weldele, and the Director of the JRDC Program, Susan Hagan (both Northrop employees).  (ECF No. 88 at 23, ¶ 166; ECF No. 96 at 19, ¶ 166.)

Also in the fall of 2013, Northrop learned that there would be a budgetary shortfall for its services on the JRDC contract in next fiscal year.  (ECF No. 81 at 8, ¶ 19.)  Ms. Hagan and Mr. Weldele therefore assessed how to reorganize and streamline certain JRDC organizations, including the TEO.  (*Id.* at 9, ¶¶ 21–23.)  In part because of Mr. Sintas's departure, they decided to "integrate" or merge the TEO into the larger Ballistic Missile Defense System ("BMDSS") organization (the "TEO-BMDSS merger").  (*Id.* at 9, ¶ 24.)  The Organization Manager of the BMDSS, Mr. Michael Whitehorne, would remain manager of the merged organization.  (*Id.* at 10, ¶ 25.)

Mr. Whitehorne concluded that the TEO-BMDSS merger would result in overlap of some functions performed by employees of the two merging organizations.  (*See id.* at 10, ¶ 26.)  As Northrop puts it, he therefore "conducted a reduction in force for all significantly common functions."  (*Id.* at 10, ¶ 29.)  In plain language, he sought to cut several positions.  To determine which positions would be eliminated, Mr. Whitehorne conducted what Northrop calls a "Rack and Stack" review, a "process of selecting

4

positions to be eliminated in a reduction in force by evaluating staff against certain criteria to determine the lowest performing individuals." (*Id.* at 10, ¶ 29 & n.6.)  Mr. Whitehorne implemented the "rack and stack" from October 17 to 28, 2013, by conducting employee interviews and reviews, ranking the individuals reviewed, and recommending which positions should be eliminated.  (*Id.* at 11, ¶ 31.)  Plaintiff was among the individuals he evaluated.  (*Id*. at 11, ¶ 32.)

As addressed below, the parties have differing views of the roles Mr. Weldele and Ms. Hagan played in the "rack and stack" review, but the evidence is clear that Mr. Whitehorne played the primary role.  (*See, e.g., id.* at 10, ¶ 29; ECF No. 99 at 17, ¶ 29.) And, it is undisputed that Mr. Whitehorne had no knowledge of Plaintiff's harassment complaint at the time.  (ECF No. 81 at 19, ¶ 74.)

The "rack and stack" ranked Plaintiff lowest of all employees evaluated.  (*Id.* at 12, ¶¶ 37–38.)  Based on his evaluations and rankings, Mr. Whitehorne recommended that seven positions be eliminated, including Plaintiff's.  (*Id.* at 16, ¶ 57.)  Mr. Whitehorne presented those  recommendations to Mr. Weldele, who approved them (*id.* at 16–17, ¶¶ 60–61), and forwarded them to Ms. Hagan, who then gave the final approval to eliminate the seven positions (*id.* at 17, ¶ 62).

Plaintiff's position on the JRDC Contract was eliminated effective November 22, 2013.  (*Id.* at 17, ¶ 63.)  She remained employed by CAS, through February 20, 2014, but was not re-hired to another position on the JRDC.  (*Id.* at 17, ¶ 63.)  She filed a charge of discrimination with the Colorado Civil Rights Division and the EEOC on November 25, 2013 (*id.* at 17, ¶ 65), received her Notice of Right to Sue on May 15,

2014 (*id.* at 17, ¶ 67), and timely initiated this lawsuit on August 7, 2014 (ECF No. 1).

### III.  ANALYSIS

#### A.    Legal Framework and Plaintiff's Claim

Title VII makes it unlawful under for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of sex.  42 U.S.C. § 2000e-2.

Employers are also forbidden to "discriminate against any of his employees . . . because [the employee] has opposed any . . . unlawful employment practice."  42 U.S.C. § 2000e-3.  Title VII's anti-retaliation provision states in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter.

§ 2000e-3(a).  In short, this provision prohibits "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination."  *University of Texas Southwester Medical Center v. Nassar*, 133 S. Ct. 2517, 2522 (2013) ("*Nassar*") (citing § 2000e-3(a)).

Here, Plaintiff brings a single cause of action for unlawful retaliation, alleging that both Northrop and CAS took adverse employment actions against her in retaliation for her sexual harassment complaint.  (ECF No. 56 ¶¶ 105–115.)  As to Northrop, Plaintiff alleges its adverse action was to eliminate her position on the JRDC.  (*Id.* ¶ 109.)[2]  As to

---

[2] Plaintiff's complaint also alleged that Northrop's failure to re-hire her to another position was an adverse action.  (ECF No. 56 ¶ 115.)  She has not supported or developed that argument in her summary judgment filings.

CAS, Plaintiff alleges its adverse actions were acquiescing in Northrop's retaliation, and failing to find her a replacement position on the JRDC.  (*Id.* ¶¶ 110–114.)

## B.     Northrop's Motion for Summary Judgment

Northrop moves for summary judgment on Plaintiff's retaliation claim, arguing there is no triable issue of fact on at least one necessary element of Plaintiff's retaliation claim—causation—and that it had legitimate non-retaliatory reasons to eliminate Plaintiff's position.  (*See* ECF No. 81 at 21– 31.)

Plaintiff has not presented direct evidence of a retaliatory motive and therefore seeks to prove her claim using indirect or circumstantial evidence of retaliation under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  (*See* ECF No. 99 at 23–26.)  Under this framework, Plaintiff must first establish a *prima facie* case of retaliation; the burden then shifts to the employer to provide a legitimate and facially nondiscriminatory reason for its decision; if the employer satisfies this burden, plaintiff then must establish that the employer's reasons were "merely a pretext" for discrimination.  *Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014).  Plaintiff's showings must meet a preponderance of the evidence standard.  *Id.*; *Ward v. Jewell,* 772 F.3d 1199, 1202 (10th Cir. 2014).

The three elements that Plaintiff must establish for her retaliation claim against Northrop are:  (1) that she engaged in protected opposition to discrimination; (2) that she suffered an adverse employment action; and, (3) that a causal connection existed between the protected activity and the adverse employment action.  *Ward*, 772 F.3d at 1202–03.

Here, Northrop contests the third element, arguing that Plaintiff cannot prove a causal connection between her protected conduct and Northrop's adverse employment action.[3]  The Supreme Court addressed this requirement in *Nassar*, holding that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  133 S. Ct. at 2528.[4]  This means that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Id*. at 2533; *see also Bennet v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) ("Title VII retaliation claims require an employee to demonstrate that, but for her protected activity, she would not have faced the alleged adverse employment action." (citing *Nassar*, 133 S. Ct. at 2534)).

"To establish a causal connection, [plaintiff] must present 'evidence of circumstances that justify an inference of retaliatory motive.'"  *Ward*, 772 F.3d at 1203 (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).  The Tenth Circuit has held—applying *Nassar*—that to survive summary judgment a plaintiff must provide evidence of "but-for" causation between the protected conduct and adverse action, and that such evidence "must be based on more than mere speculation,

---

[3] Northrop does not dispute the first and second elements at the summary judgment phase, though reserving the right to do so at trial.  (*See* ECF No. 81 at 21 n.17.)

[4] As explained in *Nassar*, this "but for" causation distinguishes the causation requirement for retaliation claims from the less demanding showing needed to prove status-based discrimination claims.  *See generally Nassar*, 133 S. Ct. at 2524–31; *see also id.* at 2535 (Ginsburg, J., dissenting) (explaining that under *Nassar* "a retaliation claim . . . must meet a stricter standard").

conjecture, or surmise." *Ward*, 772 F.3d at 1203 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).[5]

Plaintiff may rely on circumstantial evidence to prove causation, including an inference drawn from "temporal proximity" where the adverse employment action was taken within a short time following the protected conduct.  *See, e.g.*, *Webb v. Level 3 Commc'ns, LLC*, 167 F. App'x 725, 734 (10th Cir. 2006) ("A causal connection 'may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982))).

Here, the evidence establishes temporal proximity:  Plaintiff filed her harassment complaint on September 17, 2013 (ECF No. 81 at 7, ¶ 13); her supervisor was removed

---

[5] Plaintiff argues that the heightened "but for" causation requirement should not alter her burden of establishing a *prima facie* case, only her "ultimate burden of proof."  (ECF No. 99 at 23–26; *id.* at 24 & n.3 (citing *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 251 (4th Cir. 2015) ("*Nassar* does not alter the causation element of a *prima facie* case of retaliation")).) She argues that the Tenth Circuit has not construed *Nassar* to the contrary to raise the burden for her *prima facie* case.  (ECF No. 99 at 24 & n.3.)

This argument appears to be contrary to Tenth Circuit's decisions including *Ward*, and *Davis v. Unified School District 500*, 750 F.3d 1168, 1172–73 (10th Cir. 2014).  In both cases, the Tenth Circuit applied *Nassar* to affirm summary judgments against retaliation plaintiffs, concluding that they had failed to make out their *prima facie* cases for lack of showing but-for causation.  *Ward*, 772 F.3d 1203; *Davis*, 750 F.3d at 1172 ("*Davis* must make a *prima facie* case of but-for causation").

However, even if Plaintiff is correct that the Court should not require any heightened showing of but-for causation in the *prima facie case*, because the "burden of production at the prima facie stage is not onerous," *Bennett*, 792 F.3d at 1267 (internal quotation marks omitted), the result is still the same in this case.  As explained below, Plaintiff's failure to demonstrate causation turns on the fact that the relevant decision-maker, Mr. Whitehorne, was unaware of her protected conduct.  The cases holding that a plaintiff cannot establish causation if the relevant decision-maker was unaware of her protected conduct pre-date *Nassar*.  *See infra* at 10–11.  This requirement applies to plaintiff's *prima facie* case, regardless of whether *Nassar* altered the required burden.

by October 4, 2013 (*id.* at 8, ¶ 16); the recommendation to eliminate her position under the "rack and stack" was made on or around October 22, 2013 (*see* ECF No. 99 at 20, ¶ 115); and her position was eliminated effective November 22, 2013 (ECF No. 81, ¶ 63), all within approximately two months of Plaintiff making her complaint.  The Tenth Circuit has stated that two months between the protected activity and the adverse action may be sufficient to infer causation.  *See Webb*, 167 F. App'x at 734–35 (collecting cases).

However, even where there is close temporal proximity, it is well established in the Tenth Circuit that to establish causation in a retaliation claim, the plaintiff "must show that the individuals who took adverse action against him knew of his protected opposition." *Zokari v. Gates*, 561 F.3d 1076, 1195 (10th Cir. 2009); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993); *Webb*, 167 F. App'x at 735 ("While, as a general rule, temporal proximity may be sufficient to establish a causal connection between the protected activity and the adverse action, we still require a plaintiff to show that the individual who took the adverse action against plaintiff also knew of the employee's protected activity.").

Here, despite the temporal proximity, Plaintiff has not raised a triable issue of fact on causation because she has not presented evidence showing that the adverse action(s) were taken by individuals who were aware of her harassment complaint. Specifically, the decision-maker who made the evaluations and recommendations leading to elimination of Plaintiff's position was Mr. Whitehorne, who Plaintiff concedes was unaware of her protected activity at the time.  (ECF No 99 at ¶ 74.)  She thus has not presented evidence from which a reasonable jury could conclude that her protected

10

activity was a but-for cause of the adverse action.  *See Williams*, 983 F.2d at 18.

Without establishing causation, Plaintiff cannot support a *prima facie* case of retaliation

by Northrop.

Plaintiff's arguments against this conclusion ultimately lack evidentiary support

and thus fail to raise a genuine issue of material fact for trial.  Plaintiff argues that in

addition to Mr. Whitehorne, both Mr. Weldele and Ms. Hagan were involved in the "rack

and stack," and in deciding to eliminate her position, and that their involvement creates a

triable issue of fact on the potential inference that one of them acted with a retaliatory

motive.  (*See* ECF No. 99 at 26–27.)

This argument fails for two related reasons.  First, whatever their level of

involvement in the "rack and stack," no evidence shows that Mr. Weldele or Ms. Hagan

took any action that was *adverse* to Plaintiff.  Plaintiff concedes that Mr. Whitehorne

developed the recommendation to eliminate her position.  (ECF No. 99 at 26; *id.* at 15,

¶ 60.)  She thus cannot argue that Mr. Whitehorne's recommendations were themselves

based on retaliatory motives.[6]  This non-retaliatory recommendation to eliminate

Plaintiff's position was then approved and carried out, and no alterations adverse to

Plaintiff were requested or taken by Mr. Whitehorne's superiors in the JRDC operation,

Mr. Weldele and Ms. Hagan.  Plaintiff acknowledges, as she must, that Mr. Weldele

"reviewed *and approved*" Mr. Whitehorne's recommendations.  (ECF No. 99 at 26

(emphasis added).)  He then forwarded them to Ms. Hagan, who gave "final *approval*."

---

[6] Plaintiff also does not argue that the decision to merge the TEO and BMDSS organizations was by itself retaliatory, only that the decision to eliminate her position as part of that merger was.  (*See* ECF No. 56 ¶¶ 108–09.)

(*Id.*; *see also id.* at 60; ECF No. 98-3 (Mr. Weldele writing he "agree[d] with all your [Mr. Whitehorne's] assessments").)

The actions taken by Mr. Weldele and Ms. Hagan to *approve* Mr. Whitehorne's recommendations were at worst neutral as to Plaintiff.  She points to no evidence identifying actions they took that were harmful or materially adverse to her, other than approving the recommendations formulated by Mr. Whitehorne.  Formally approving these recommendations was not by itself a retaliatory action adverse to Plaintiff's interests.  And Plaintiff cannot establish that the recommendations from Mr. Whitehorne had a retaliatory motive.  Thus, the individual who took the materially adverse action was unaware of Plaintiff's protected opposition, while the individuals who were aware of it took only neutral actions.  On this record there is not a sufficient causal link between the protected conduct and the adverse action.  *Cf. Ward*, 772 F.3d at 1205 (explaining that to survive summary judgment on a "cat's paw" theory of liability, plaintiff must show that the same individuals—there, subordinates recommending an action that was later adopted—both harbored bias and had "influence in the decision-making process").

The second and related problem with Plaintiff's argument about Mr. Weldele and Ms. Hagan's role in the "rack and stack" is that the evidence does not support Plaintiff's argument that they had substantive involvement in recommending the elimination of Plaintiff's position.  Northrop argues that Mr. Weldele and Ms. Hagan's role was limited to confirming that Mr. Whitehorne had followed the correct procedures and approving his recommendations.  (ECF No. 114 at 3, ¶ 29.)  Plaintiff argues that both Mr. Weldele and Ms. Hagan were more involved.  (ECF No. 99 at 7, ¶ 29.)  In particular, she argues that Mr. Weldele was "responsible for providing feedback" during the process (*id.* ¶ 32); she

12

also implies that he had some hand in evaluating her job performance (*id.* at 7–8, ¶ 32).

Plaintiff's evidence does not raise a genuine issue of material fact on this dispute. Plaintiff relies on Mr. Whitehorne's testimony that Mr. Weldele was "[r]esponsible for ensuring I follow the process, provide any feedback if appropriate, and if not to forward it on." (ECF No. 99-10 at 14.)  From this statement, Plaintiff emphasizes that Mr. Weldele was, in theory, responsible to provide unspecified "feedback," but she points to no evidence that he ever in fact did so.  (*See* ECF No. 99 at 17–18, ¶¶ 29, 32.)

She likewise cites communications between Messrs. Weldele and Whitehorne before the "rack and stack" recommendations were finalized.  (*Id.* at 7, ¶¶ 29, 32.) These communications amount to Mr. Whitehorne presenting his recommendations to Weldele and a few others for review or discussion during the last days of the "rack and stack."  He then formalized these results and presented his recommendations to the larger organization.  (*See* ECF Nos. 98-2, 98-3; 98-4, 99-7 at 26, 99-11.)  In the communications Plaintiff cites, however, Mr. Whitehorne was already recommending that Plaintiff's position be eliminated and presenting that recommendation for review. (*See, e.g.*, ECF No. 99-7 at 25–26.)[7]  Again, Plaintiff cites no evidence that Weldele provided substantive input contributing to Plaintiff's negative evaluation or the

_____

[7] The earliest evidence Plaintiff cites is an October 22, 2013 e-mail in which Whithorne states he is "talking around . . . the transition of CAM functions from the current CAM," indicating that he had already proposed eliminating Plaintiff's position as of this first cited communication with Mr. Weldele.  (ECF No. 98-2 at 2.)  As Plaintiff acknowledges, this communication also included a proposed organization chart eliminating her position.  (ECF No. 99 at 20, ¶¶ 108–113.)  This is followed by an October 23, 2013 e-mail stating that Mr. Weldele was "good with everything we have."  (*Id.* at 1).  In additional e-mails on October 25, 2013, Plaintiff was the first employee listed by Mr. Whitehorne among those proposed for position cuts, and he noted she was "not competent" (ECF No. 98-3 at 2); Mr. Weldele responded the same day stating "I agree with all of your assessments" (*id.* at 1).

13

recommendation to eliminate her position.[8]  To the contrary, the available evidence shows that during his evaluation of Plaintiff's job performance, Mr. Whitehorne spoke with Plaintiff's direct supervisor, but not to Mr. Weldele or Ms. Hagan.  (ECF No. 99-10 at 12.)[9]

In summary judgment terms, Plaintiff's argument on this point is that there is a dispute of material fact regarding the role Ms. Hagan and/or Mr. Weldele played during the "rack and stack."  This issue is material because it bears on the element of causation.  *See Wright*, 259 F.3d at 1231–32.  If they played a role in determining that Plaintiff's position should be eliminated, there would be a potential inference of a retaliatory motive, and likely a triable issue of fact.  But here, this issue is not "genuine," because, even taking the evidence and inferences in the light most favorable to Plaintiff, the evidence would not permit a reasonable trier of fact to conclude that Mr. Weldele or Ms. Hagan did anything more than to receive and approve Mr. Whitehorne's recommendations at the end of the process.  *See Allen*, 119 F.3d at 839.  At most, Plaintiff's evidence raises the speculation that because Mr. Weldele was in theory responsible for "feedback," and had some communications with Mr. Whitehorne, he *might have* also had other communications earlier in the process or *might have* inserted himself in the performance review in some fashion not shown in the evidence.  But such "speculation, conjecture, or surmise" are not enough evidence of causation to survive

---

[8]  Plaintiff cites no evidence showing Ms. Hagan was involved in the "rack and stack" or in Plaintiff's job evaluation in any way other than to approve the final result.

[9] In her deposition, Plaintiff testified that she believed Mr. Weldele, along with Mr. Whitehorne and possibly her direct supervisor were the individuals responsible for her performance evaluation during the "rack and stack" (ECF No. 81-10 at 10), but in her summary judgment briefing she cites no evidence showing that Mr. Weldele was involved in her review.

summary judgment.  *See Ward*, 772 F.3d at 1203.

In sum, the evidence does not show a genuine issue of material fact regarding whether anyone who knew of Plaintiff's protected conduct—that is anyone other than Mr. Whitehorne—took actions materially adverse to Plaintiff.  Plaintiff therefore cannot establish the element of causation for her claim against Northrop.  Because she has not supported a *prima facie* case, summary judgment is appropriate.  *Ward*, 772 F.3d at 1205; *Nassar*, 133 S. Ct. at 2532 (explaining that hypothetical employee "fired for poor performance" who also engaged in protected opposition cannot survive summary judgment against an employer who whose "lawful action[s]" "were not in fact the result of any . . . retaliatory intent").

## C.    CAS's Motion For Summary Judgment

Although Plaintiff alleges that the direct adverse employment action against her was taken by Northrop, she also pursues a retaliation claim against CAS, alleging it acquiesced in Northrop's action and failed to prevent or redress the alleged retaliation. (*See* ECF No. 56 ¶¶ 110–14.)

The Court allowed Plaintiff to proceed on this "duty to protect" theory, holding that CAS could be liable if "it knew or reasonably should have know of the discrimination but failed to take prompt corrective measures within its control."  (ECF No. 73 at 7; *id.* at 6 (citing EEOC, No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, 1997 WL 33159161, at *10).)

CAS has moved for summary judgment against this claim.  (ECF No. 79.) Plaintiff's claim against CAS is in effect derivative of her claim against Northrop:  it

requires showing "discrimination" by Northrop that could give rise to a duty requiring CAS to protect Plaintiff from that discrimination.  Plaintiff cannot make out the elements of her claim against CAS where she has not established discrimination by Northrop. Because the Court concludes that Plaintiff's claim against Northrop fails for lack of causation, her claim against CAS must also fail.  The Court therefore grants CAS's Motion for Summary Judgment.  (ECF No. 79.)

**D.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff has moved for partial summary judgment, seeking a ruling that although she was formally employed by CAS, Northrop was her Joint Employer.  (ECF No. 88.) Because Plaintiff cannot establish causation for her claim against Northrop, she cannot succeed on a claim against Northrop, even assuming it was a Joint Employer.  This issue is therefore moot and the Court denies Plaintiff's Motion as such.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant Northrop Grumman Systems Corporation's Motion for Summary Judgment (ECF No. 80) is GRANTED;

2.     Defendant CAS, Inc,'s Motion for Summary Judgment (ECF No. 79) is GRANTED; and

3.     Plaintiff's Motion for Partial Summary Judgment Against Defendant Northrop Grumman on Joint Employment Relationship Pursuant to Fed. R. Civ. P. 56 (ECF No. 86) is DENIED AS MOOT.

4.     Judgment shall enter in favor of Defendants CAS and Northrop, and Defendants shall have their costs.  The Clerk shall terminate this action.

Dated this 18th day of July, 2016.

BY THE COURT:

William J. Martínez
United States District Judge